UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SANDRA LESIBU,

                Plaintiff,

        -against-

NEW YORK STATE DEPARTMENT OF
EDUCATION,

                Defendant.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**

05 CV 5664 (RJD) (RML)

DEARIE, Chief Judge.

On December 5, 2005, plaintiff Sandra Lesibu brought this action against Blanca Del Rosario and New York State Department of Education ("NYSDE") for gender discrimination, sexual harassment, and retaliation. By stipulation dated June 6, 2006, all claims against Del Rosario were dismissed with prejudice (Dkt. No. 11). On July 17, 2008, this Court heard oral argument regarding defendant New York State Department of Education's motion for summary judgment. In accordance with discussion with counsel, by Order dated July 22, 2008, the Court granted defendant's motion with respect to all of plaintiff's remaining claims of gender discrimination and retaliation and invited the parties to provide a chronology of events following plaintiff's April 7, 2003 complaint of sexual harassment, along with supporting affidavits (Dkt. No. 61, Oral Arg. Tr. 27:16-28:7). The sole remaining claim in this case is plaintiff's Title VII sexual harassment-hostile work environment claim, see 42 U.S.C. § 2000e et seq., which the Court now dismisses for the reasons stated herein. This case is filed under seal.

## BACKGROUND

The Court writes for the parties, who are familiar with the underlying facts and procedural history of this case. The following is a summary of the facts relating to plaintiff's sexual harassment-hostile work environment claim against defendant NYSDE.

### A. Facts Regarding Plaintiff and Blanca Del Rosario

Plaintiff, an African-American female, has worked for NYSDE as an Associate in Early Childhood Education since 1988. (See Compl. ¶¶ 9, 11.)[1] Plaintiff claims that her colleague, Ms. Blanca Del Rosario, made a series of unwanted sexual advances beginning around 2001. (See Compl. ¶ 13.) Del Rosario had worked with plaintiff for over fifteen years, but because of a change in duties began working more closely with plaintiff in 1999 or 2000. (See Oct. 19, 2006 Lesibu Dep. 141, Def.'s Br., Ex. D (hereinafter "10/19/06 Lesibu Dep.").) Del Rosario, also an Associate, has never held a supervisory position over plaintiff. (See Oct. 26, 2006 Lesibu Dep. 70-71, Def.'s Br., Ex. E (hereinafter "10/26/06 Lesibu Dep.").) In September 2004, plaintiff was transferred, and plaintiff and Del Rosario no longer work together. (See Compl. ¶ 22.)

Plaintiff and Del Rosario had established, if not a close friendship, at least some level of acquaintance beyond that of just colleagues. Plaintiff sought advice from Del Rosario regarding difficulties that plaintiff's daughter was having. (See Blanca Del Rosario Dep. 85-95, Def.'s Br., Ex. C (hereinafter "Del Rosario Dep.").) Plaintiff's family shared a holiday dinner with Del Rosario in 2001, at a restaurant, which plaintiff described as "no big deal" considering they had worked together for more than fifteen years. (See 10/26/06 Lesibu Dep. 165.) Del Rosario also

---

[1]All references are to plaintiff's Second Amended Complaint (Dkt. No. 10). All factual ambiguities are resolved in favor of plaintiff, the non-moving party. See, e.g., Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

2

invited plaintiff to a two-hour seminar hosted by Landmark Education in Manhattan, an event unaffiliated with NYSDE, which plaintiff attended. (See 10/19/06 Lesibu Dep. 141.)

### 1. Inappropriate Touching By Del Rosario

Plaintiff alleges that over the course of several years, Del Rosario engaged in a pattern of inappropriate touching and harassment of plaintiff. Describing one such occasion, plaintiff claims that at a conference table outside plaintiff's office, Del Rosario offered to rub plaintiff's back, an offer which plaintiff refused, stating "I don't accept back rubs from anyone other than my husband or my lover and [Del Rosario] was neither." (Dec. 27, 2006 Lesibu Dep. 21:13-22:18., Def.'s Br., Ex. F (hereinafter "12/27/06 Lesibu Dep.").) Although four colleagues were present—plaintiff describes them as Darlene, Linda, Gail, and Lila—plaintiff said she was unsure whether any of them heard Del Rosario's request or plaintiff's refusal. (Id.) Plaintiff further alleges that on one occasion around August 2002 Del Rosario inappropriately "came into the office and began to swing her arms back and forth toward [plaintiff's] crotch area,"(see Pl.'s Resp. to Def.'s First Interrog. # 11, Def.'s Br., Ex. H), and on another occasion, in April 2003, Del Rosario touched plaintiff's buttocks, (12/27/06 Lesibu Dep. 74.) Plaintiff also claims that at a retirement party outside the office Del Rosario "cupped" plaintiff's hands, allegedly clasping both of plaintiff's hands in "a sensual manner." (10/26/06 Lesibu Dep. 53, 163.) Finally, plaintiff claims that Del Rosario would often touch her shoulders in the workplace. (10/26/06 Lesibu Dep. 161.) Plaintiff fails to specify when or how many times this type of contact occurred—her estimates range from four times to more than ten—but plaintiff stated that "it was

enough to annoy [her]." (10/26/06 Lesibu Dep. 161.)[2]

According to plaintiff, the inappropriate touching by Del Rosario culminated on April 7, 2003, shortly after plaintiff, Del Rosario, and Darlene Butler, a Keyboard Specialist, were all standing in plaintiff's office, watching the falling snow and discussing their commutes. Plaintiff claims that Del Rosario then walked behind plaintiff and rubbed her hand across plaintiff's buttocks, and that Butler witnessed the incident. (See Compl. ¶ 15; 10/26/06 Lesibu Dep. 160.) However, in both a letter written shortly after the incident and an affidavit, Butler states that she left the office to answer a telephone, and only saw plaintiff and Del Rosario leave plaintiff's office shortly thereafter. (See April 10, 2003, Butler Ltr., Def.'s Br., Ex. B (hereinafter "Butler Ltr."); Butler Aff. ¶ 3, Dkt. No. 68 (hereinafter "Butler Aff.").) Butler states that she then heard plaintiff tell Del Rosario that she "did not like to be touched and not to touch [her] anymore." (Butler Ltr.) Butler explicitly maintains that she never actually saw Del Rosario touch plaintiff. (Butler Aff. ¶ 4.) Del Rosario denies touching plaintiff's backside, or any other part of plaintiff's body at any time. (See Del Rosario Dep. 102:24-103:6.) Plaintiff produces no other witnesses to any of the alleged instances of inappropriate contact by Del Rosario, and said in her deposition

---

[2]Plaintiff's reports of such unwanted touching are often contradictory. In her Complaint, plaintiff states that the touching began in approximately 2001 (Compl. ¶ 13), while her response to defendants' first set of interrogatories states that Del Rosario began touching plaintiff's shoulders in 2002 (Pl.'s Resp. to Def.'s First Interrog. # 11, Def.'s Br., Ex. H). In her opposition brief, meanwhile, plaintiff states that Del Rosario's unwelcome advances began in 2000. (Opp'n Br. 6.) Plaintiff's contentions also vary significantly with respect to the frequency of Del Rosario's physical contact. During one deposition, plaintiff stated that Del Rosario was "constantly harassing me, asking me for dates, touching me, fondling me . . . " (10/26/06 Lesibu Dep. 89), and that Del Rosario had rubbed her shoulders "more than ten times" (id. at 158), and, curiously, that Del Rosario could have touched plaintiff's shoulders "more than four times" inside plaintiff's personal office, and that Del Rosario never touched plaintiff outside of that office (id. at 161-62).

that Del Rosario "always did it outside of their view." (10/26/06 Lesibu Dep. 161.) During a subsequent deposition, however, plaintiff stated that "Dalene, Linda, Gail, and Lila . . . were always there. Whether they saw it I don't know, but they were laughing." (12/27/06 Lesibu Dep. 22.) During a deposition, plaintiff testified that "all [Del Rosario] had to say was I'm sorry . . . that would have been the end of it. Even if she meant it, she could have saved herself and myself from going any further with the complaint. All she had to say was, oh, I'm sorry—[.]" (12/27/06 Lesibu Dep. 73-74.)

### 2. The Landmark Education Seminar

Sometime between 2000 and 2002, Del Rosario invited plaintiff to a two-hour, introductory Landmark Education Seminar in Manhattan. (10/19/06 Lesibu Dep. 143 ("anywhere between 2000 and 2001, 2002 sometime"); Del Rosario Dep. 85-86 (seminar held at the World Trade Center, therefore before September 11, 2001).) Plaintiff stated that other coworkers "were talking about it in the office" and that "[o]ther people knew about it." (10/19/06 Lesibu Dep. 143.) Plaintiff attended, and during the seminar, representatives of Landmark encouraged attendees to stay for the weekend-long program. (Id. at 141-44.) Del Rosario invited plaintiff to stay at her apartment in Manhattan, because, according to Del Rosario, it would make it much easier for plaintiff to attend the weekend program. (Id.) Plaintiff lived an hour's drive away, in Brewster, New York. (Id.) While at first plaintiff accepted Del Rosario's offer, plaintiff eventually declined the offer, which she now characterizes, without elaboration, as sexually suggestive. (See Compl. ¶ 14.)[3]

---

[3]In her unverified Complaint, plaintiff alleges that Del Rosario "became enraged and then pleaded with plaintiff to stay over." (See Compl. ¶ 14.) Plaintiff did not repeat this allegation in her sworn deposition.

5

### 3. Defendant Allegedly Followed Plaintiff Into the Bathroom

Plaintiff also alleges that on two occasions Del Rosario followed her into a public restroom. (See 10/26/06 Lesibu Dep. 97:20-21.) The first incident occurred during a meeting outside of the NYSDE office, in a conference room above a school supply store, around 2002. (Id. at 98:2-15.) Plaintiff went to the bathroom, while the meeting was in progress, and found herself alone in the bathroom with Del Rosario when she emerged from the stall. (Id. at 98:18-19; 101:13-14.) It was a small bathroom, and plaintiff noticed defendant standing in front of her bathroom stall, less than a foot away. (Id. at 100.) They did not speak to one another. (Id.)

The second incident happened in June 2006, during a work-related meeting attended by 200 or 300 people at James Madison High School. (Id. at 103.) During the meeting (and not during a break), plaintiff left to use the bathroom, which had about five stalls and ten people in it at the time. (Id. at 103-104.) Again, she says she left her stall to find defendant standing right outside of it. (Id. at 105.) And again, they did not speak to one another.[4]

### 4. Additional Allegations of Harassment

Plaintiff cites two further incidents which she characterizes as harassment. The first involves a reportedly "hideous looking" doll with blonde hair that someone placed on plaintiff's work computer. (10/19/06 Lesibu Dep. 190:2.) Plaintiff claims the doll was intended to represent Del Rosario, as it had blonde hair like Del Rosario, and the doll's skin color looked "like someone mixed," supposedly like Del Rosario, who is Puerto Rican. (Id. at 190, 200,

---

[4]The Court pauses to register its disapproval of plaintiff's repeated efforts to exaggerate the evidence of record, this time in the form of her assertion that Del Rosario made "suggestive gestures" during the two bathroom encounters. (See Pl.'s 56.1 Resp. ¶ 12.) Counsel fails to cite admissible evidence in support of this allegation, in violation of Local Rule 56.1(d). Counsel's unsubstantiated bolstering of plaintiff's claims is both inappropriate and disrespectful.

202:18-20.) Plaintiff also claimed the fingers of the doll were bent into the shape of a "trigger-finger"—that is, of someone holding a gun. (Id. at 191.) She "showed [the doll] to a lot of different people," then "asked the director of facilities to put in a file," then "showed it to counselor [sic] in Sexual Harassment, then "threw it in the garbage," and cannot now produce it. (See 10/19/06 Lesibu Dep. 191:22-192:18.) Shortly after this incident, plaintiff took a nine (9) month medical leave for "personal and work related stress." (Pl.'s Resp. to Def.'s Interrog. #11.)

Plaintiff also received an unsolicited, two-year subscription to *STUFF* magazine, which depicts female models, but is not pornographic. She told Neil Crowley, an NYSDE Human Resources manager, that she believed Del Rosario was sending them, in part because of what plaintiff saw as a pattern of harassment, and in part because "the magazines were mostly white women and, apparently, [Del Rosario] thought she looked like that." (10/26/06 Lesibu Dep. 89.) NYSDE produces a letter from Dennis Publishing, Inc., which states that plaintiff herself purchased a long-distance phone plan which included the *STUFF* subscription as a promotional gift. (See Def.'s Br., Ex. J.) On another occasion, plaintiff says she received an email containing a link to a pornographic website (defendant describes the email as "spam"), which plaintiff suspected was sent by Del Rosario. (10/26/06 Lesibu Dep. 84.) The email also stated in its subject line, "Kill her and get a new gf [girlfriend]." (10/19/06 Lesibu Dep. 187.) Plaintiff complained to John Miller, a supervisor, who instructed her to inform the help desk to try to determine who sent the email. (Id.) He also told her that if she felt threatened, she should notify the police, which she did. No one could determine the origin of the email, and even plaintiff

admitted that anyone could have sent it. (Id. at 188.) She has not receive a similar email. (Id.)[5]

**B.    NYSDE's Response**

Beginning in 2002, but prior to the April 7, 2003 fondling incident, plaintiff complained "several times" to the Sexual Harassment Office about Del Rosario, and plaintiff had one appointment in 2003, after the incident. (10/19/06 Lesibu Dep. 164.) Plaintiff also stated that she called Neil Crowley, the Human Resources Management ("HRM") Associate Personnel Administrator, and Ian Biaggi, a New York States Employee Assistance Program officer, frequently to discuss Del Rosario's actions. (Id. at 167, 170 (e.g., contacted Neil Crowley perhaps more than ten times).) However, the record does not reflect that plaintiff filed any formal, written complaints of specific incidents until April 7, 2003. (See especially, 10/19/06 Lesibu Dep. 153-58 (stating that, while plaintiff also discussed these issues with Dr. Sandra Hernon, a supervisor, she did not want to file a formal grievance).)

After the April 7, 2003 incident, plaintiff sent an email to Del Rosario asking her to refrain from touching plaintiff. (See Lesibu email to Del Rosario, Apr. 7, 2003, Pl.'s Opp'n, Ex. A.) Plaintiff did not send the email to anyone else. (Id.) Del Rosario, however, sent a memorandum to Cassandra Grant, an Associate on the Accountability, Policy and Administration team, and Sandra Norfleet, the NYSDE Regional Education Coordinator in plaintiff's office,

---

[5]The Court notes, but accords little weight to the following additional allegations, which are likely inadmissible, legally deficient and factually speculative: (1) plaintiff's assertion that other coworkers laughed or made jokes at her expense, see Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) ("[S]imple teasing, offhand comments, and isolated incidents" not cognizable violations of Title VII); and (2) plaintiff's allegation that two phone calls are related to the alleged pattern of harassment (see Compl. ¶ 19 (unknown caller contacting plaintiff at home in 2003, referencing a meeting at which both Del Rosario and plaintiff were present); 10/26/06 Lesibu Dep. 155:20-158:5 (Valentine's Day call from Del Rosario at work in 2000, not alleged in the Complaint, during which Del Rosario told plaintiff she had a "nice voice").)

dated April 8, 2003, describing Del Rosario's version of the event. (See Del Rosario Mem. to Cassandra Grant and Sandra Norfleet, Apr. 8, 2003, Pl.'s Opp'n, Ex. D.) In the memorandum, Del Rosario states that she entered the office to watch the snow fall, and upon leaving, plaintiff yelled, "I am going to smack you; I don't like people touching me." (Id.) Del Rosario denied touching plaintiff, said that plaintiff threatened her, and asked NYSDE to take measures ensuring her safety. (Id.) Del Rosario included a printed copy of the email that plaintiff had sent to her. (Id.) Plaintiff alleges that she also notified Sandy Norfleet, Neil Crowley and Ian Biaggi of the April 7, 2003 incident at the time. (Compl. ¶ 18.) However, she has not produced any record of such communication.

After receiving the memorandum, Grant and Norfleet reported both complaints to Shelia Evans-Tranumn, the Associate Commissioner of Education, and to the office of Human Resources Management. (See Grant Decl. ¶ 4.) Neil Crowley, Associate Personnel Administrator of HRM, had Grant reply to Del Rosario in writing and speak to Butler about the incident. (Id. ¶ 5-6.) Butler memorialized what she witnessed in a written statement. (See Butler Ltr.) Crowley then "discussed the investigation" with other HRM personnel and contacted Steve Earle, the Director of NYSED's Office for Diversity, Ethics and Access. Together they decided to move Del Rosario to an office away from plaintiff when possible. (See Grant Decl. ¶ 7.) On April 14, 2003, Norfleet offered an office to Del Rosario on another floor (see Sandra Norfleet email to Del Rosario, Apr. 14, 2003, Norfleet Decl., Ex. 5), but Del Rosario did not find the office satisfactory because she would have to share it with another coworker. (See Del Rosario email to Sandra Norfleet, Apr. 15, 2003, Pl.'s Opp'n, Ex. P.) Del Rosario testified that in September or October of 2003, approximately five months after the incident, her office was

relocated to roughly fifty (50) feet away from plaintiff's office, but still on the same floor. (See Del Rosario Dep. 175-76, 2d Supp. Dahlberg Decl., Ex. 1.) Plaintiff has not offered any evidence to suggest that Del Rosario moved offices later than five months after the incident. Plaintiff transferred away from the office on September 23, 2004, and no longer works with Del Rosario. (Compl. ¶ 22; Shelia Evans-Tranumn email to Gayle Gowden, Sept. 14, 2004, Pl.'s Opp'n, Ex. M (stating that Evans-Tranumn had moved plaintiff because of "her erratic and threatening behavior").)[6]

On December 1, 2004, Crowley spoke to plaintiff on the telephone about the April 7, 2003 incident and NYSED's response. In an email exchange between plaintiff and Crowley following the discussion, Crowley wrote, "I believe that moving [Del Rosario] away from your work area was the action that was taken and that was satisfactory to you at the time." (Crowley email to Pl., Dec. 2, 2004, Pl.'s Opp'n, Ex. H (hereinafter "12/2/04 Crowley email").) After acknowledging the email during a deposition, plaintiff testified that Crowley "was very supportive" and that while plaintiff did not "know if [Del Rosario] was moved voluntarily or she just moved herself, . . . [plaintiff] was glad to see her go." (12/27/06 Lesibu Dep. 146-47, Def.'s Reply, Ex. 2.)

## DISCUSSION

In order to succeed on her hostile work environment-sexual harassment claim plaintiff

---

[6]Plaintiff's Local Rule 56.1 Response asserts NYSDE "did nothing" to address her complaints between April 7, 2003 and September 24, 2004. (See Pl.'s 56.1 Resp. ¶ 14.) Not only does plaintiff fail to cite admissible evidence in support of this contention (citing instead to an unrelated portion of her 12/27/06 deposition), but her position is also contradicted by other evidence of record, namely that her supervisors investigated the incident, that Del Rosario moved to a different office five months later, and that plaintiff acknowledged this to be a satisfactory outcome at the time. (See 12/2/04 Crowley email; Del Rosario Dep. 176.)

must establish two elements: (1) that the alleged harassment was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment," Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993); see also Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997); and (2) that a basis exists for imputing the hostile work environment claim to the employer, NYSDE. See, e.g., Perry, 115 F.3d at 149; Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002); see also Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 80-81 (1998) (same-sex sexual harassment claims analyzed under the same framework). As explained below, plaintiff has failed on both counts.

## A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000) (quoting Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991)).

The court "must first resolve all ambiguities and draw all inferences in favor of the non-moving party . . . ." Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). However, in opposing a motion for summary judgment, the nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the adverse party's pleading." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) (quotation marks and citation omitted). Rather, the nonmoving party must "set forth specific facts showing that there

is a genuine issue of fact for trial." Fed. R. Civ. P. 56(e). "If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir.1998) (internal quotations and citations omitted) (alteration in original).

In a Title VII case, "a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997). "Even in the employment discrimination context, '[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and the grant of summary judgment is proper.'" Goldman v. Admin. for Children's Servs., No. 04-7890, 2007 U.S. Dist. Lexis 39102, at *13 (S.D.N.Y. May 29, 2007) (quoting Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)).

## B. Hostile Work Environment

Plaintiff alleges that the actions of Del Rosario and other NYSDE employees created a "hostile working environment" tantamount to unlawful sex discrimination under Title VII. To succeed on this claim, plaintiff must show that her workplace was "severely permeated with discriminatory intimidation, ridicule, and insult." Alfano, 294 F.3d at 373. "Whether sexual harassment alters the conditions of employment 'is not, and by its nature cannot be, a mathematically precise test.'" Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 605 (2d Cir. 2006) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 22 (1993)). Nor is there a "fixed number of incidents a plaintiff must endure in order to establish a hostile work environment . . . ." Alfano, 294 F.3d at 379. Even a single act of discrimination can meet the threshold if it works

a "transformation of the workplace." Id. Rather, the Court "must determine the existence of sexual harassment in light of the record as a whole and the totality of [the] circumstances." Raniola v. Bratton, 243 F.3d 610, 617 (2d Cir. 2001) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 69 (1986). This inquiry may include such non-exhaustive factors as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. Plaintiff's required showing is both subjective and objective: "the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." Alfano, 294 F.3d at 374 (quoting Harris, 510 U.S. at 21). In sum, "a plaintiff alleging a hostile work environment must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." Id. (internal citations and quotation marks omitted).

Even generously regarding plaintiff's factual claims, the Court cannot conclude that the behavior attributed to plaintiff's coworkers constitutes workplace harassment. First, plaintiff has failed to present reliable evidence sufficient to suggest that her own characterization of events reflects the objective reality of her situation. She supports her allegations primarily with her own deposition testimony, which is often speculative, conclusory and internally inconsistent.[7] See,

---

[7] For example, as noted above, though plaintiff stated that Del Rosario always touched her outside the view of other co-workers (see 10/26/06 Lesibu Dep. 161:21-23), she later claimed that others were "always there" (see 12/27/06 Lesibu Dep. 22:14-17). Plaintiff also claims in her opposition papers that Del Rosario "frequently" asked plaintiff to spend the night, conflicting her sworn testimony that Del Rosario only extended such an invitation on one occasion. (Compare

13

e.g., Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d Cir. 1997) (concluding, in light of Rule 56(e), district court properly refused to rely on affidavits "based upon . . . conclusory allegations"); Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996) ("[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment."). In addition to her own testimony, plaintiff reproduces copies of her emails to various coworkers and supervisors containing equally conclusory statements accusing other coworkers of harassment. In fact, the vast majority of plaintiff's documentary evidence in support of her claims comes in the form of her own contemporaneous emails and memoranda. (See, e.g., Pl.'s Opp'n, Ex. A (email dated Apr. 7, 2003 from Pl. to Del Rosario); Ex. B ("follow-up memo" concerning the Apr. 7, 2003 incident, composed by Pl., recipient unknown); Ex. E (Jun. 6, 2006 email to Steven Earle from Pl., describing bathroom incident at James Madison High School); Ex. F (email to co-worker Lila Chui from plaintiff accusing Chui of retrieving plaintiff's documents from the copy machine and eavesdropping on plaintiff's conversations); Ex. I (emails to NYSDE technical support staff concerning "spam" message); Ex. L (memorandum from plaintiff to OGS Security regarding "trigger finger" doll); see also Ex Q (memorandum from Shelia Evans-Tranumn to Eslyn Williamson documenting a phone call from plaintiff in which she described, in great detail, the contents of the "spam" email).) While these materials may carry some weight as contemporaneous corroboration of plaintiff's sworn deposition testimony, plaintiff has not presented specific facts establishing the requisite objective showing that a transformation of the workplace occurred. See, e.g., Lewis v. North General Hospital, No. 06-4909, 2007 U.S. Dist. LEXIS 62490, *32-36 (S.D.N.Y. Aug. 23, 2007).

---

Pl.'s Opp'n 6 with 10/19/09 Lesibu Dep. 141.)

Second, plaintiff's substantive allegations are both too episodic and too moderate to defeat summary judgment. At best, plaintiff has created an issue of fact regarding the following: (1) five incidents of touching or rubbing of plaintiff's shoulder by Del Rosario; (2) one occasion when Del Rosario swung her arms close to plaintiff's "crotch area" and another occasion, eight months later, when Del Rosario touched plaintiff's buttocks; (3) two occasions, separated by four years, when Del Rosario allegedly followed plaintiff into the bathroom, but had no interaction with plaintiff, verbal or physical; (4) one instance when Del Rosario "cupped" plaintiff's hands while greeting her at a retirement party; and (5) one occasion when Del Rosario invited plaintiff to stay at her apartment following an event outside of work.[8] If true, these acts may be inappropriate and even offensive to plaintiff, but no allegation in particular constitutes an incident so egregious as to transform the workplace. Taken together, the alleged events occurred too sporadically over the course of (at least) four years to establish a pervasive discriminatory pattern. See e.g., Morris v. Ales Group USA, No. 04-8239, 2007 U.S. Dist. LEXIS 47674, *33-34 (S.D.N.Y. Jun. 29, 2007) (granting summary judgment in favor of defendant where defendant told plaintiff he enjoyed watching topless dancing, invited her to join him in watching topless

---

[8]Plaintiff's allegation that her unsolicited subscription to *STUFF* magazine was somehow connected to her sexual harassment claims is contradicted by the September 6, 2006 letter from Dennis Publishing, Inc., stating that the subscription came free with a long-distance telephone service purchased by plaintiff herself. (See Def.'s Br., Ex. J.) Plaintiff has also failed to show that the email with subject heading "Kill her and get a new gf" was anything besides the "spam" that it strongly resembles. (See Pl.'s Opp'n, Ex. I, 273.) The sender of the email was never identified and, by plaintiff's own admission, could have been anyone. (See, e.g. 10/19/06 Lesibu Dep. 188:17-24; 189:15-21.) Likewise, plaintiff's interpretation of the doll she found on her desk in September 2003 as a threat or a representation of Del Rosario is wholly unsubstantiated, and plaintiff is unable to produce the doll itself, or any evidence linking the object to her allegations against Del Rosario and NYSDE. The Court has therefore disregarded these factual claims in assessing the severity of plaintiff's workplace conditions.

dancing, and "constantly touch[ed]" her); Lewis, 2007 U.S. Dist. LEXIS 62490, at *32-36 (granting summary judgment where supervisor brushed against plaintiff four times over three-month period); Gore v. Health Research Inst., No. 02-2432, 2007 U.S. Dist. Lexis 27993, at *8-12, 29 (E.D.N.Y. Apr. 16 2007) (granting summary judgment where plaintiff alleged several incidents of touching on the neck, shoulders and thigh, one grab on the backside and one request to use the bathroom at plaintiff's home over a six-year period); Gonzales v. Kahan, No. 88-922, 1996 U.S. Dist. Lexis 22715, at *11-14 (E.D.N.Y. Nov. 27, 1996) (finding a few invitations to go out, a marriage proposal, a "bear hug," an obscene phone call to plaintiff's home and "lascivious" staring over a two and a half year period insufficient to create a hostile work environment); see also Weiss v. Coca-Cola Bottling Co. of Chicago, 990 F.2d 333, 337 (7th Cir. 1993) (affirming grant of summary judgment where, during a four-month period, plaintiff's supervisor asked plaintiff out, called her a "dumb blond," placed his hand on her shoulder several times, attempted to kiss her, and posted "I love you" signs in her work area).

Though sympathetic to plaintiff's account of her employment conditions, after carefully considering all the evidence presented on summary judgment, the Court finds that no reasonable juror could conclude that plaintiff endured a hostile work environment as defined under Title VII.

## C. Imputation

This Court need not explore the adequacy of NYSDE's response to plaintiff's allegations, having already found plaintiff's sexual harassment claim insufficient as a matter of law. Nevertheless, the Court finds that plaintiff likewise fails to adduce sufficient evidence for a reasonable juror to find NYSDE's response legally deficient for imputation purposes.

Because Del Rosario was not plaintiff's supervisor, liability for Del Rosario's actions can

only be imputed to NYSDE, "if it either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." Ferris v. Delta Air Lines, Inc., 277 F.3d 128, 136 (2d Cir. 2001) (internal quotation marks omitted), cert. denied, 537 U.S. 824 (2002). To survive summary judgment, plaintiff must create "an issue of fact as to whether [NYSDE's] action [was] effectively remedial and prompt." Richardson v. New York State Dep't of Corrections Serv., 180 F.3d 426, 441 (2d Cir. 1999). "Whether the company's response was reasonable has to be assessed from the totality of circumstances." Distasio v. Perkin Elmer Corp., 157 F.3d 55, 65 (2d Cir. 1998). The Court considers such factors as "the gravity of the harm being inflicted upon the plaintiff, the nature of the employer's response in light of the employer's resources, and the nature of the work environment." Id. at 65.

Plaintiff has not raised a genuine issue as to the promptness or adequacy of NYSDE's response to the April 7, 2003 incident, and has not challenged her employer's response to any other specific complaint of sexual harassment.[9] Plaintiff's imputation evidence fails for two primary reasons: (1) she fails to present sufficient evidence showing that NYSDE's response was untimely or inadequate under the circumstances; and (2) plaintiff herself acknowledged that defendant's response was adequate.

---

[9]In her opposition brief, plaintiff also cites her frequent complaints to Neil Crowley ("I didn't go, like — but it was like, "Neil, guess what happened today") and Ian Biaggi (one email in 2004). (See Pl.'s Opp'n 8 (citing 10/19/06 Lesibu Dep. 171-72 (not produced), 173, 176, 178, 179).) Plaintiff does not, however, indicate any specific actions by Del Rosario that prompted these complaints, nor does she provide a written record of the complaints, or a record of the responses she received, if any. Plaintiff must make some showing beyond her own allegations that there were events to investigate and respond to, and the circumstances of those events. Indeed, even *some* evidence will not defeat summary judgment, for plaintiff's burden is to adduce *sufficient* evidence to raise an issue of fact. See Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000).

17

First, defendant offers the declarations of Neil Crowley, Sandra Norfleet, and Cassandra Grant concerning both the investigation in the days following Del Rosario's memorandum, and the ultimate response taken by NYSDE. Plaintiff herself never actually contacted any of these individuals immediately after the incident, though her email to Del Rosario was treated as a formal complaint by Crowley, Norfleet and Grant. (See,e.g., Norfleet Decl. ¶ 4.) Within days of the incident, Darlene Butler, the only witness, was approached by Grant and asked to memorialize what she saw. (See, e.g., Crowley Decl. ¶ 5.); cf. Wahlstrom v. Metro-North Commuter R.R., 89 F. Supp. 2d 506, 525 (S.D.N.Y. 2000) (granting summary judgment on imputation grounds where "the investigation began immediately after plaintiff complained about the incident and, within two days, all the pertinent witnesses had been interviewed"). On April 14, 2003, one week after the incident, Del Rosario was offered another office on a different floor, but declined because she did not want to share an office. (See Pl.'s Opp'n, Ex. P.) Norfleet and Grant both state that as soon as another single office was available, Del Rosario moved. (See Norfleet Decl. ¶7; Grant Decl. ¶ 7.) Del Rosario testified that she moved to an office approximately fifty (50) feet away on the same floor, five months later. (Del Rosario Dep. 175.) The delay therefore resulted, at least in part, from a shortage of resources, a factor the Court may consider in assessing the adequacy and promptness of defendant's response. See Distasio v. Perkin Elmer Corp., 157 F.3d at 65. Viewing the facts in their totality, after the April 7, 2003 incident defendant faced conflicting reports of a relatively mild incident, in which both Del Rosario and plaintiff complained of feeling threatened. Defendant's investigation was prompt and treated both complaints seriously. While plaintiff understandably may have expected a different response, lodging a complaint does not entitle an employee to the remedy of her

choosing. See, e.g., Wahlstrom, 89 F. Supp. 2d at 526.

Second, and more importantly, plaintiff acknowledged as accurate a December 2, 2004 email from Neil Crowley to plaintiff in which he specifically cites Del Rosario's move as the remedial action taken, and that, at the time, plaintiff was satisfied with the response. (See Pl.'s Opp'n, Ex. H; 12/27/06 Lesibu Dep. 146-47.) Plaintiff even stated that Crowley had been "very supportive" throughout the ordeal. (12/27/06 Lesibu Dep. 147.) Particularly in light of plaintiff's own sworn testimony, a reasonably juror could only conclude that defendant's response proved adequate under the circumstances.

The Court therefore finds that summary judgment in favor of defendant NYSDE is appropriate on the alternative ground that plaintiff has failed to raise a genuine factual issue as to the promptness and adequacy of defendant's response to her complaint of sexual harassment.

## CONCLUSION

For the reasons discussed above, defendant's motion for summary judgment is granted in its entirety, and plaintiff's only remaining claim is hereby dismissed with prejudice. The Clerk is accordingly directed to close this case.


SO ORDERED
Dated: Brooklyn, New York
　　　　March 31, 2009

　　　　　　　　　　　　　　　　　　　　s/Raymond J. Dearie
　　　　　　　　　　　　　　　　　　　　―――――――――――――――
　　　　　　　　　　　　　　　　　　　　RAYMOND J. DEARIE
　　　　　　　　　　　　　　　　　　　　United States District Judge